# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### BEAUFORT DIVISION

| | | |
|---|---|---|
| Chester A. Ray, Jr. and Mary S. Ray, *as Personal Representatives of the Estate of Christian Daniel Ray*, | ) ) ) ) | C/A No. 9:19-cv-147-TMC |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| South Carolina Department of Corrections; Warden Cecilia Reynolds, *individually and in her official capacity as Warden of Lee Correctional Institution*; Correctional Officer Major Bernadette Richardson, *individually and in her official capacity as an employee of South Carolina Department of Corrections*; Correctional Officer Angela Leatherwood, *individually and in her official capacity as an employee of South Carolina Department of Corrections*; Courtney A. Dixon, *indiv. and in her official capacity as an employee of South Carolina Department of Corrections*; and N. Fox, *individually and in her official capacity as an employee of South Carolina Department of Corrections*, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiffs Chester A. Ray, Jr. and Mary S. Ray ("Plaintiffs") brought this action as Personal Representatives of the Estate of Christian Daniel Ray ("Ray") pursuant to 42 U.S.C. § 1983 and the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. §§ 15-78-10 to 15-78-220 in the Lee County Court of Common Pleas. (ECF No. 1-1). Defendants subsequently removed the action to federal court. (ECF No. 1). Presently, the South Carolina Department of Corrections ("SCDC") and Correctional Officer Angela Leatherwood ("Sergeant Leatherwood"), who was sued both individually and in her official capacity as an employee of SCDC, are the only remaining

defendants in this action.[1] In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this matter was referred to a magistrate judge for all pretrial proceedings. This matter is now before the court on the magistrate judge's Report and Recommendation ("Report") (ECF No. 80) recommending that the court grant in part and deny in part Defendants' motion for summary judgment (ECF No. 64).

## I. Background

### A. Facts

In opposing Defendants' motion for summary judgment, Plaintiffs presented evidence reflecting the well-documented history of inmate-on-inmate violence at Lee Correctional Institution ("LCI") where Ray, the victim, was incarcerated. This evidence includes a report drafted by Security and Detention Consultant Tim Roth (the "Roth Report") detailing the effects of understaffing at correctional institutions run by SCDC, including LCI. (ECF No. 65-10). The Roth Report indicates that "[s]ecurity staffing levels have been a critical concern at Lee for an extended period[,]" and includes data reflecting that security staffing was at a low point in 2017 at the time of the assault on Ray. *Id*. at 100. According to the Roth Report, the most substantial staffing shortage was in "front-line positions" that have the most frequent contact with the inmates, *id*. at 101, and, as of March 2018, the majority of the front-line staff at LCI had been there for less than one year, *id*. at 107. The Roth Report suggests that insufficient staffing was a contributing factor to the inability to control contraband, including weapons, and to the number of inmate-on-inmate assaults at LCI, resulting in the deaths of inmates in 2009, 2016, 2017, and 2018—"an

---

[1] *See* (ECF Nos. 43 (dismissing N. Fox as a party to this action); 51 (dismissing Warden Cecilia Reynolds and Major Bernadette Richardson as parties to this action); 73 (dismissing Courtney A. Dixon as a party to this action)).

extremely high number of fatal incidents for any facility." *Id*. at 104–105. The incident in question here is one of these fatal assaults.

Plaintiffs allege that on July 15, 2017, while incarcerated at LCI, Ray was "attacked and stabbed multiple times by [inmate] gang members who then also attacked and stabbed three (3) other inmates." (ECF No. 1-1 at 8). Plaintiffs allege that Ray suffered a "stab wound" that "perforated an artery" and caused profuse bleeding. *Id*. at 9. According to Plaintiffs, Ray did not receive medical attention for more than three hours and ultimately died from exsanguination. *Id*.

On that day, Sergeant Leatherwood was the only correctional officer assigned to the unit where Ray was housed. (ECF No. 64-2 at 27).  Ray's unit consisted of two wings connected by a sallyport-type hallway and housed a maximum of 256 inmates. (ECF No. 65-10 at 98–99). Each wing had two tiers, each with cells, and a day room. *Id*. According to Sergeant Leatherwood, LCI post orders required that a correctional officer assigned to a unit wing perform a security check of that wing approximately once an hour. A security check, which a correctional officer performed by walking around both tiers of the wing, took thirty minutes to complete. (ECF No. 64-2 at 16, 20, 22). Following the security check, the correctional officer was required to lock the door between the wing and the sallyport. *Id*. If a single correctional officer was assigned to monitor both wings of a housing unit at LCI, as Sergeant Leatherwood was in this case, the officer would be completely absent from one wing for thirty minutes while conducting a security check of the other wing. *Id*. at 24–25. Sergeant Leatherwood indicated that in a correctional officer's absence during this time, assaults can occur, and other problems can arise between inmates. *Id*.  According to the Roth Report, this less-than-ideal situation is not uncommon at LCI, and "[h]aving a total of between one and two staff assigned to a 250-bed housing unit which contains limited to no

3

electronic surveillance support . . . creates an environment where the perceived opportunity to commit an assault can initially go undetected." (ECF No. 65-10 at 105).

Nathan Battle, who shared a cell with the inmate later charged in Ray's death, testified that shortly before the attack on Ray, he tried to inform Sergeant Leatherwood that "something ain't right" and that "something [was] about to happen." (ECF No. 78-1 at 5). Battle had an "uncomfortable" feeling based on an encounter he had with his cellmate earlier in the day when Battle's cellmate told him to leave the cell because he did not bathe properly. *Id*. at 3. Because Battle had washed recently, he concluded "the situation [was] about something else," although he could not "really put [his] hand on the situation" at the time. *Id*. Battle determined that his cellmate, who was a member of the Bloods gang, was attempting to create "an excuse to try to start something with me." *Id*. Battle then recounted this incident to a group of inmates he trusted, including Ray, who urged him to report the incident to a correctional officer. *Id*. at 10.

Battle found Sergeant Leatherwood in the sallyport between the two wings of his housing unit. *Id*. at 4, 6–7. Battle testified that Sergeant Leatherwood had not appeared on his wing all day, remaining instead in the sallyport, where visibility into either wing was limited. *Id*. at 7. According to Battle, he and Sergeant Leatherwood had the following exchange:

> Q. What did you tell Sergeant Leatherwood?
>
> A. I told her that something ain't right, I feel uncomfortable, like I feel . . . that something about to happen and she was like what you think going to happen and I was like I feel like something about to happen and that's when she just was like, well, if you ain't trying to tell me what about to happen, just go ahead and get back on the wing . . . ain't nothing wrong with you.
>
> Q. Did she ask you why you thought something was going to happen?

4

A. No, . . . she [did not] ask none of that. She just was like just go back on the wing. . . . [S]he thought I was playing, because that's what . . . most people [do] with the COs . . . .

. . .

Q. Did you tell her what your roommate had said?

A. No, I [did not] tell her what he said. All I told her was I feel like something ain't right. That's all I told her and that's when she told me well just go back on the wing and whatever happen...

*Id*. at 5–6. Battle indicated that he then told Ray that Sergeant Leatherwood was not going to become involved or help, at which point Ray went to "see what was going on" and was assaulted and stabbed. *Id*. at 2, 10–11. Battle speculated at his deposition that Sergeant Leatherwood "kn[e]w what was going on" because she never came out of the hallway to perform a round or security check in the wings where the inmates were located and because, prior to the assault on Ray, Battle saw an inmate (and Bloods gang member) from a different wing near his cell in violation of facility rules. *Id*. at 3–4, 7, 11.

Defendants offer portions of Sergeant Leatherwood's deposition testimony to refute Battle's testimony. (ECF No. 64-2). Sergeant Leatherwood indicated that the assault on Ray began while she was in the bathroom located in the sallyport. *Id*. at 29. She claims that she saw Ray being attacked by several inmates on one of the wings, entered the wing, and stood between Ray and his attackers. *Id*. at 34. Sergeant Leatherwood testified she "begged them to let me get [Ray] off the wing" and then pushed him into the hallway/sallyport area to wait for first responders to arrive. *Id*. According to Sergeant Leatherwood, first responders arrived in five minutes to tend to Ray who was bleeding profusely. *Id*. at 34–35. Sergeant Leatherwood denied that she received any warning about potential violence that day. *Id.* at 46–47. Had she received such a warning, however, Sergeant Leatherwood indicated that she would have informed her lieutenant. *Id*. at 47.      She

stated that she would have informed her lieutenant even if the warning lacked specifics, such as an inmate's statement that "something's going on" or "[s]omething feels funny." *Id*.

## B. Procedure

Plaintiffs filed this action on December 12, 2018 in the Lee County Court of Common Pleas (ECF No. 1-1), and Defendants removed this action to federal court in January 2019 (ECF No. 1). The complaint includes seven causes of action. The complaint includes seven causes of action; however, only the third, fifth, sixth, and seventh causes of action assert claims against the remaining Defendants, Sergeant Leatherwood and SCDC.  Plaintiffs' third cause of action, brought pursuant to § 1983, asserts that Sergeant Leatherwood was deliberately indifferent to Ray's constitutional rights by failing to protect him; allowing inmates to possess dangerous weapons; failing to conduct inspections to ensure inmates did not possess weapons; "violating the separation policy by allowing inmates from one wing to improperly enter into another wing in violation of . . . SCDC policies and procedure"; and "abandoning her post so as to permit the physical assaults." (ECF No. 1-1 at 13–14). Plaintiffs assert a fifth cause of action against SCDC for wrongful death under the South Carolina Tort Claims Act ("SCTCA"), (ECF No. 1-1 at 16–18)[2], and a sixth cause of action against SCDC for survival under the SCTCA, *id*. at 19–21.

On September 3, 2020, Defendants SCDC and Sergeant Leatherwood filed a motion for summary judgment.[3] (ECF No. 64). Plaintiffs filed a response in opposition to summary judgment (ECF No. 65), and Defendants filed a reply (ECF No. 68). On February 2, 2021, the magistrate judge issued her Report recommending that the court grant in part and deny in part Defendants'

---

[2] The seventh cause of action in the complaint is duplicative of the fifth cause of action. (ECF No. 1-1 at 21–23).
[3] Defendant Courtney A. Dixon joined this motion but, as previously noted, was dismissed from this action in October 2020 (ECF No. 71).

6

motion for summary judgment. (ECF No. 80). Defendants filed objections to the Report (ECF No. 81), and Plaintiffs responded to those objections (ECF No.82). Plaintiffs did not file any objections of their own and the time for doing so has now expired. Accordingly, this matter is ripe for the court's review.

## II. Legal Standards

### A. Report of the Magistrate Judge

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Wimmer v. Cook*, 774 F.2d 68, 72 (4th Cir. 1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017). "An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id.* at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). On the other hand, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g.*, *Howard v. Saul*, 408 F. Supp. 3d 721, 726 (D.S.C. 2019) (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Ashworth v.*

*Cartledge*, Civ. A. No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely almost verbatim restatements of arguments made in his response in opposition to Respondent's Motion for Summary Judgment . . . do not alert the court to matters which were erroneously considered by the Magistrate Judge"). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

### B. Summary Judgment

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Phillips v. Nlyte Software Am. Ltd.*, 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'" *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)). However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc.*, 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of proving that summary judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc.*, 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322–23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).

## III. Discussion

### A. Report's Findings and Conclusions: No Objections

Before considering the contested issues, the court will briefly summarize the findings and conclusions set forth in the Report. First, the magistrate judge concluded that the Eleventh Amendment bars Plaintiffs' § 1983 claims for monetary damages against Sergeant Leatherwood *in her official capacity* and, accordingly, recommended that the court grant summary judgment as to Plaintiffs' § 1983 claims for monetary damages brought against Defendant Leatherwood in her official capacity. (ECF No. 80 at 8). However, the magistrate judge found that Eleventh Amendment immunity did not shield SCDC from Plaintiffs' state law tort claims "because SCDC voluntarily removed this case to federal court and South Carolina has consented to suit for tort claims filed against it in state court." (ECF No. 80 at 8). Neither Plaintiffs nor Defendants objected to these conclusions and recommendations.

Second, the magistrate judge determined that Plaintiffs' claims against Sergeant Leatherwood for deliberate indifference and failure to protect Ray "implicate the Eighth

Amendment's proscription against cruel and unusual punishment, not the Fourteenth Amendment's requirement of due process" given that Ray was "a convicted inmate at the time of the alleged incidents." *Id*. at 9–10. Therefore, the magistrate judge recommended the court grant summary judgment on Plaintiffs' claims to the extent they assert that Sergeant Leatherwood violated Ray's Fourteenth Amendment rights. *Id*. at 10. No objections were lodged with respect to this conclusion either.

After a careful review of the foregoing conclusions and recommendations in the Report, the applicable law, and the record in this case, the court finds no clear error and adopts the magistrate judge's recommendations that the court (1) grant summary judgment as to Plaintiffs' § 1983 claims for monetary damages brought against Sergeant Leatherwood in her official capacity and (2) grant summary judgment on Plaintiffs' claims to the extent they assert a violation of Ray's Fourteenth Amendment rights.

### B. Report's Disputed Findings and Conclusions

#### 1. Section 1983 Failure to Protect Claim Against Sergeant Leatherwood

##### (a) Report & Objections

Turning to Plaintiffs' Eighth Amendment failure to protect claim, the magistrate judge considered whether the evidence, viewed in a light most favorable to Plaintiffs, could establish that Sergeant Leatherwood "either purposefully caused the harm or acted with 'deliberate indifference.'" *Id*. at 11 (quoting *Farmer v. Brennan*, 511 U.S. 825, 825 (1994)). That is, as the magistrate judge correctly observed, Plaintiffs must submit sufficient evidence to establish that Sergeant Leatherwood "'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Id*. (quoting *Farmer*, 511 U.S. at 837). The magistrate judge found, based on Battle's deposition testimony, that Plaintiffs had created "a genuine dispute of material fact as to whether Defendant

10

Leatherwood had at least an 'inkling' that an attack on Ray would occur." *Id*. at 16–17 (citing *James v. Cartledge*, No. 9:15-cv-0625-TLW-BM, 2016 WL 1448557, at *7 (D.S.C. Mar. 2, 2016)). Therefore, the magistrate judge recommended that the court deny Defendants' motion for summary judgment as to Plaintiffs' § 1983 failure to protect claim against Sergeant Leatherwood. *Id*. at 16.

Defendants objected to the conclusion that there is any evidence before the court, even if the record is viewed in a light most favorable to Plaintiffs, that would support the conclusion that Sergeant Leatherwood was aware of a substantial risk of serious harm to Ray. (ECF No. 81 at 6–14). Defendants argue that Plaintiffs have not highlighted any evidence that shows Battle told Sergeant Leatherwood that he was being threatened or that he was afraid of an attack. *Id*. at 10–11. Defendant's note, instead, that Battle's testimony reflects that he provided no specifics to Sergeant Leatherwood, stating only that "something ain't right, I feel uncomfortable . . . that something about to happen . . . ." *Id*. Defendants point out that Battle acknowledged that he did not mention what his cellmate had said to Sergeant Leatherwood. *Id*. at 12. Finally, with respect to the magistrate judge's conclusion that the record contains conflicting testimony between Battle and Sergeant Leatherwood, Defendants contend that if there is a conflict, it is not material. *Id*. at 14. Specifically, Defendants suggest that the only conflict is whether, in fact, Battle told her "something was going on"—a claim Sergeant Leatherwood denied in her deposition. *Id*. at 13. Defendants argue that even if Battle made this statement to Sergeant Leatherwood, it was insufficient to establish her awareness of an excessive risk of serious harm. *Id*. at 13–14.

In reply to Defendants' objections, Plaintiffs contend they submitted evidence showing that: (1) "Sargent [sic] Leatherwood was assigned to monitor two wings at the same time, [but] that she violated post orders (SCDC policies) when she knowingly left Mr. Ray's wing unattended"

even though she recognized that "a lot of things can happen when an officer is absent from a wing, such as fights, robberies of property, beatings and stabbings[;]" and (2) Sergeant Leatherwood "had knowledge of the violence, dangerous activities happening at the prison" and that she knew, from witness Battle, there was a fight about to happen." (ECF No. 82 at 3). Plaintiffs would have the court conclude that "Sargent [sic] Leatherwood was alerted there was a problem but choose to leave the wing, despite knowing that leaving her assigned post would allow for inmates to be unmonitored and stabbings to occur." *Id*. For purposes of this motion, the issue is whether there is evidence that would permit a reasonable trier of fact to conclude that Sergeant Leatherwood was aware of a substantial risk of serious harm before Ray was assaulted and killed.

(b) Analysis

"The Eighth Amendment imposes a duty on prison officials 'to protect prisoners from violence at the hands of other prisoners.'" *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *Farmer*, 511 U.S. at 833). The Eighth Amendment, therefore, prohibits officials from "gratuitously allowing the beating . . . of one prisoner by another" which obviously would not serve a "legitimate penological objective" or "square[] with evolving standards of decency." *Farmer*, 511 U.S. at 833 (internal quotation marks, alteration and omitted). Nevertheless, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Odom*, 349 F.3d at 770 (quoting *Farmer*, 511 U.S. at 834).

Therefore, "[a] prisoner seeking to prove a violation of the Eighth Amendment must satisfy an objective requirement of showing that the deprivation that he suffered in prison was sufficiently serious and a subjective requirement of showing that the defendant had a sufficiently culpable state of mind . . . so as to ensure that the deprivation qualifies as a *punishment* implicating the Eighth

Amendment." *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal quotation marks omitted). In prison-conditions cases involving an assault of one inmate by another, "that state of mind is one of deliberate indifference to inmate health or safety." *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (internal quotation marks omitted). The deliberate indifference standard imposes "a particularly high bar to recovery," *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008), and "showing of mere negligence will not meet it," *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). The Supreme Court has explained that a correctional officer will not be liable for deliberate indifference "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

In their opposition to summary judgment and reply to Defendants' objections, Plaintiffs contend that Battle's deposition testimony, the report of their expert witness James Aiken, and the Roth Report create a question of fact regarding whether Sergeant Leatherwood knew of and disregarded an excessive risk to inmate health or safety. (ECF Nos. 65 at 7–16; 82 at 3–4). With respect to Battle's testimony, Plaintiffs state that Sergeant Leatherwood knew "there was a fight about to happen" but chose to leave the wing anyway. (ECF No. 82 at 3). According to Plaintiffs, "Battle testified that he went out of the wing door which was unlocked and talked to Sgt. Leatherwood in the sally port [sic] hallway where she was sitting and told her that there was trouble brewing" but "[s]he did not ask him any questions about what kind of trouble but just told him to go back onto the wing." (ECF No. 65 at 14–15). Both contentions mischaracterize the actual evidence. Battle did not testify that he told Sergeant Leatherwood he felt threatened or feared a fight or an assault. Instead, Battle testified he told her "something ain't right, I feel uncomfortable,

like I feel . . . that something about to happen." (ECF No. 78-1 at 5). According to Battle, Sergeant

Leatherwood did ask a follow-up question about *what* he thought was going to happen:

> Q. What did you tell Sergeant Leatherwood?
>
> A. I told her that something ain't right, I feel uncomfortable, like I feel . . . that something about to happen and *she was like what you think going to happen* and I was like I feel like something about to happen and that's when she just was like, well, if you ain't trying to tell me what about to happen, just go ahead and get back on the wing . . . ain't nothing wrong with you.
>
> Q. Did she ask you why you thought something was going to happen?
>
> A. No, . . . she [did not] ask none of that. She just was like just go back on the wing. . . . [S]he thought I was playing, because that's what . . . most people [do] with the COs . . . .

*Id.* at 5–6 (emphasis added).

Although these facts might be sufficient to establish that Sergeant Leatherwood had an

inkling that trouble was afoot in that area of the prison, Battle's testimony falls short of establishing

that Sergeant Leatherwood was "aware of facts from which the inference could be drawn that a

substantial risk of serious harm exist[ed]" and that she, in fact, "dr[e]w the inference." *Farmer*,

511 U.S. at 837. "[S]ubjective awareness of only some risk of harm to a prisoner is insufficient for

a deliberate-indifference claim." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 Fed. App'x 921,

926 (10th Cir. 2020). Plaintiffs claiming deliberate indifference must show the official in question

"possess[ed] enough details about a threat to enable [him] to conclude that it presents a strong

likelihood of injury, *not a mere possibility*." *Id.* Courts have generally concluded, therefore, that

an official's awareness of a plaintiff's non-specific fear of harm is insufficient to support a

deliberate indifference claim. *See, e.g., Turner, 804 Fed. App'x at 926* (explaining that "threats

between inmates are common and do not, under all circumstances, serve to impute actual

knowledge of a substantial risk of harm" and that "subjective awareness of only some risk of harm to a prisoner is insufficient for a deliberate-indifference claim"); *Marbury v. Warden*, 936 F.3d 1227, 1237 (11th Cir. 2019) (*per curiam*) ("Marbury's statement that an another inmate told him another inmate intended to harm him is precisely this type of vague statement that conveys nothing about the nature of the anticipated risk that we cautioned in Rodriguez would not rise to the level of deliberate indifference to a substantial risk."); *Knox v. Doe*, 487 F. App'x 725, 728 (3d Cir. 2012) (finding inmate's complaint alleging that he submitted request slips to prison officials seeking to be relocated within prison failed to contain sufficient factual matter to state a claim for relief that is plausible on its face because inmate failed to show that he "told prison officials which other prisoners were making the threats or why they were doing so"); *Rodriguez v. Sec'y for the Dep't of Corr.*, 508 F.3d 611 (11th Cir. 2007) (observing that vague statements like "I have a problem with another inmate in this compound" absent some information "about the nature of the anticipated risk" are insufficient to create a genuine issue of fact regarding deliberate indifference to a substantial risk of serious harm); *Crofts v. Davis*, No. 1:20-cv-00378-DCN, 2021 WL 1061971, at *2 (D. Idaho Mar. 19, 2021) (Plaintiff's vague statement that he "can't" be housed with certain inmates was insufficiently specific to make Defendant aware of a risk to a substantial risk to Plaintiff's safety); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)); *Irvin v. Owens*, No. 10-1336, 2012 WL 1534787, at * 4 (D.S.C. Apr. 30, 2012) (concluding general statement that Plaintiff believed conditions placed him in danger not sufficient for deliberate indifference claim); *Beasley v. Stephens*, No. 10-895-GPM, 2011 WL 2670189, at *3 (S.D. Ill. July 7, 2011) (explaining that "[a] vague, general fear of harm that is not based on a specific threat is not enough to state a cause of action for deliberate indifference or failure to protect"). The court concludes,

therefore, that Battle's testimony, without more, is clearly insufficient to establish Sergeant Leatherwood was subjectively aware of an excessive risk to Ray's health and safety.

This conclusion, however, does not end the court's inquiry as "a factfinder may conclude that [an officer] knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. In such cases, "it is not enough that a reasonable officer *would have* found the risk to be obvious" but, instead, "the risk of injury must be 'so obvious that the fact-finder could conclude that the [officer] *did* know of it because he could not have failed to know of it.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir.1995)). Accordingly, "[a] plaintiff can make a prima facie case of deliberate indifference by showing that a substantial risk of serious harm was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (internal quotation marks and alteration omitted).

Towards that end, Plaintiffs submitted the Roth Report to show the chronic and pervasive history of violence at LCI and other SCDC facilities due, at least in part, to insufficient staffing, and, in order to show Sergeant Leatherwood's familiarity with these problems, highlighted snippets of her testimony where she stated there was "a shortage of staff at Lee Correctional" and that robberies, fights and stabbings between inmates have occurred when a correctional officer is not present. (ECF No. 64-2 at 9, 25–26). The magistrate judge, however, considered this evidence and declined to base her recommendation on the pervasive history of violence at LCI summarized in the Roth Report, as she found no evidence indicating Sergeant Leatherwood "knew of the severity of these problems prior to Ray's assault." (ECF No. 80 at 13–14 n.13). The magistrate

16

judge explained that Sergeant Leatherwood's "testimony admitting that SCDC was experiencing a staff shortage at the time of the assault and that 'a lot of things can happen when an officer is absent from a wing,' . . . does not show that Defendant Leatherwood was exposed to information concerning a longstanding, pervasive, and well-documented risk to inmates, and thus must have known' about it." *Id.* (second internal quotation marks omitted). Plaintiffs did not object to this particular conclusion. The court, having found no evidence suggesting Sergeant Leatherwood's "expos[ure] to information concerning a longstanding, pervasive, and well-documented risk to inmates" such that she "must have known" about the risk to Ray in this set of circumstances, *Farmer*, 511 U.S. at 842, agrees with the magistrate judge's conclusion in this regard.

The court is mindful of several decisions from courts in this district denying summary judgment on a deliberate indifference/failure to protect claim on the grounds that the Roth Report provided circumstantial evidence that a substantial risk of serious harm was so pervasive and longstanding that the defendant must have known about it. *See, e.g.*, *Stephens v. S.C. Dep't of Corr., et al.*, No. 4:17-cv-3482-JFA, 2021 WL 1040521, at *7 (D.S.C. Mar. 18, 2021); *Crawford v. S.C. Dep't of Corr. et al.*, No. 6:18-cv-2407-DCN, 2020 WL 5835073 (D.S.C. Oct. 1, 2020); *Murray v. S.C. Dep't of Corr.*, No. 6:19-cv-100-RMG, 2020 WL 5948371, at *16 (D.S.C. May 5, 2020), *report & rec. adopted by* 2020 WL 3603782 (D.S.C. July 2, 2020); *Richardon v. S.C. Dep't of Corr.*, No. 6:19-cv-97-RMG-MGB, 2020 WL 4679178, at *16 (D.S.C. May 5, 2020), *report & rec. adopted sub nom. Richardson v. S.C. Dep't of Corr.*, 2020 WL 3529545 (D.S.C. June 30, 2020); *Bartlett v. S.C. Dep't of Corr.*, No. 2:17-cv-3031-RMG, 2020 WL 2499876, at *23 (D.S.C. Feb. 5, 2020), *report & rec. adopted by* 2020 WL 1041638 (D.S.C. Mar. 4, 2020). In each of these cases, however, the failure-to-protect claim was asserted against the warden or assistant warden of the facility in question who, in his or her capacity as warden, was responsible for the staffing and

17

operation of the facility and was privy to the severity of the ongoing contraband and violence problems. *See*, *e.g.*, *Bartlett*, 2020 WL 2499876, at *23 (noting "these statistics would have been made available to [Defendant] as Warden of Lieber through, inter alia, incident reports, inspection reports, contraband reports, and management information notes, as well as through his role as being 'responsible for the whole operations of the facility, day-to-day operations'"); *Richardon*, 2020 WL 4679178, at *16 (noting "the Roth Report indicates a substantial risk of serious harm to inmates at McCormick was longstanding, pervasive, and well-documented prior to Plaintiff's October 6, 2017 assault" and that "based on the quarterly contraband reports, these contraband statistics in the Roth Report would have been made available to [Defendant] as Warden of McCormick"); *Murray*, 2020 WL 5948371, at *16 (same). Furthermore, in some of these cases, unlike the instant case, correctional officials had notice prior to the assault that the victim feared for his safety or that an attack on the victim was possible. *See Stephens*, 2021 WL 1040521, at *2 ("The attack occurred after SCDC personnel informed Plaintiff that 'someone had threatened to kill him' . . . ."); *Crawford*, 2020 WL 5835073, at * 2 (finding that "[p]rior to the assault, Crawford claims that he requested to move cells based on [a previous assault] and subsequent threats of harm").  Here, there is no indication that Sergeant Leatherwood had any information that violence was imminent, that Ray (or any other inmate) feared for his safety, or that Sergeant Leatherwood, in her capacity as a front-line correctional officer with no control over staffing or operations, "must have known" about the substantial risk of serious harm to Ray prior to the attack.[4] Accordingly,

---

[4] In opposition to summary judgment, Plaintiffs also quoted from reports produced by their expert witness, (ECF No. 65 at 10–14), who opined that Sergeant Leatherwood "abandoned her post [and] initiated and caused the deadly chain of events," *id*. at 13. The reports address Defendants' purported operational failures but do not contain evidence that could establish Sergeant Leatherwood was subjectively aware of an excessive risk to Ray's health and safety and chose to disregard the risk.

the court is constrained to conclude that Plaintiffs failed to come forward with sufficient evidence to survive summary judgment on their failure to protect claim against Sergeant Leatherwood and declines to adopt the magistrate judge's recommendation that Defendants' motion for summary judgment be denied on this claim.[5]

## 2. State Law Claims

### (a) Supplemental Jurisdiction

The Report recommended that the court exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367. (ECF No. 80 at 18). Because the court is granting summary judgment as to the federal claim against Sergeant Leatherwood, which provides the basis for the court's jurisdiction over this matter, it is appropriate to consider whether to dismiss or retain jurisdiction over the state law claims. *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("[T]rial courts enjoy wide latitude in determining whether . . . to retain jurisdiction over state claims when all Federal Claims have been extinguished.").

Section 1367 affords a federal court the discretion to retain supplemental jurisdiction over state law claims even where the court has disposed of all claims with original federal jurisdiction. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over

---

[5] The magistrate judge also recommended the court deny summary judgment on the basis of qualified immunity. (ECF No. 80 at 17–18). The court, "[i]n considering a qualified-immunity defense . . . at the summary judgment stage" must conduct a two-part inquiry, asking "(1) whether the officer violated a federal right and (2) whether that right was clearly established such that the officer was on notice that his actions violated the law." *Jones v. Gross*, 675 Fed. App'x 266, 268 (4th Cir. 2017). The court may address these prongs in any order and need not address both prongs. *Pearson v. Callahan*, 555 U.S. 23, 236–37 (2009). If the officer "did not violate any right, he is hardly in need of any immunity and the analysis ends right then and there." *Abney v. Coe*, 493 F.3d 412, 415 (4th Cir. 2007). In light of the court's conclusion that Plaintiffs failed to establish Sergeant Leatherwood was deliberately indifferent to a substantial risk of serious harm in violation of Ray's constitutional rights, the court need not address the "clearly established" prong of the qualified immunity analysis.

a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ."). The Supreme Court has outlined four factors to guide the exercise of that discretion: judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Additionally, district courts in this circuit have also considered "(1) whether the claim involves straightforward application of well-defined case law," *Caughman v. S.C. Dep't of Motor Vehicles*, C/A No. 3:09-503-JFA-PJG, 2010 WL 348375, at *2 (D.S.C. Jan. 26, 2010); (2) whether the parties have completed discovery, *id*.; (3) the length of time the case has been pending in federal court, *Varner v. SERCO, Inc*., No. 2:16-cv-2340-DCN, 2018 WL 1305426, at *4 (D.S.C. Mar. 12, 2018); and (4) whether the complaint was filed in federal court, *id*.

In light of these factors, the court concludes that it should exercise its supplemental jurisdiction over Plaintiffs' state law claims. This case has been pending in federal court since January 2019. (ECF No. 1). Depositions have been taken, it appears that discovery is largely complete, and the claims have been narrowed. Were the court to return the balance of this litigation to state court, the state court would need to learn facts and issues with which this court is already familiar. Additionally, the remaining claims involve the straightforward application of well-established law. Therefore, the court concludes it is appropriate to exercise supplemental jurisdiction over the claims arising under the SCTCA.

(b) SC Tort Claims Act

"The South Carolina Tort Claims Act, which provides the exclusive remedy in tort against [the] Department, is a limited waiver of governmental immunity." *Steinke v. S.C. Dep't of Lab., Licensing & Regul*., 336 S.C. 373, 393 (1999). The South Carolina Tort Claims Act provides that the State, its agencies, political subdivisions, and other governmental entities are "liable for their

torts in the same manner and to the same extent as a private individual under like circumstances," subject to certain limitations and exemptions within the Act. S.C. Code Ann. § 15-78-40. The SCTCA allows for wrongful death actions against the State, *see* S.C. Code Ann. § 15-78-170, and implicitly provides for a survival action for conscious pain and suffering and medical expenses against the State, *see Baker v. Sanders*, 301 S.C. 170, 174 (1990); *see also Jinks v. Richland Cnty*., 355 S.C. 341 (2003) (affirming jury verdict in favor of the plaintiff, who brought wrongful death and survival action pursuant to the South Carolina Tort Claims Act, on behalf of her husband who died while incarcerated at the defendant Richland County's Detention Center).

Section 15-78-60 sets out "exceptions" to this waiver of sovereign immunity. "These exceptions act as limitations on the liability of a governmental entity." *Jinks*, 355 S.C. at 344; *see also* S.C. Code Ann § 15-78-40 (2005). One such exception, which applies in this case, provides that "[t]he governmental entity is not liable for a loss resulting from . . . responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, prisoner, inmate, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner." S.C. Code Ann. § 15-78-60(25). "Gross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Etheredge v. Richland School Dist. 1*, 341 S.C. 307, 310 (2000). It is the failure to exercise slight care. *Jinks*, 355 S.C. at 345. Gross negligence is a mixed question of law and fact and should be presented to the jury unless the evidence supports only one reasonable inference. *Bass v. S.C. Dep't of Soc. Servs*., 414 S.C. 558, 571 (2015).

*Survival Claim*

With respect to Plaintiffs' survival claim against SCDC for gross negligence, the magistrate judge concluded that summary judgment should be denied on the same basis that she recommended denying summary judgment on the deliberate indifference claim against Sergeant Leatherwood. (ECF No. 80 at 20). Additionally, the magistrate judge noted that the record reflected LCI "was suffering a severe staff shortage at the time of Ray's assault" and that "staffing levels have been a critical concern at [LCI] for an extended period." *Id*. at 21 (internal quotation marks omitted). Furthermore, the magistrate judge highlighted evidence of the number of contraband incidents and the high number of incidents involving fatalities. *Id*. In light of this evidence, the magistrate judge determined that it was reasonably foreseeable that an inmate-on-inmate attack would occur and that SCDC acted in a grossly negligent manner. *Id*. at 22–23. Accordingly, the magistrate judge recommended the court deny Defendants' motion for summary judgment as to Plaintiffs' gross negligence survival action against SCDC. *Id*. at 23.

Defendants object to this portion of the Report, arguing that Plaintiffs' state law claims should be dismissed "due to Plaintiffs failure to set forth evidence of gross negligence" and that Plaintiffs position is that the incident in question was foreseeable "simply because Mr. Ray was in a prison environment" and "prison environments are dangerous." (ECF No. 81 at 17). Essentially, Defendants are reasserting the argument that Plaintiffs failed to offer sufficient evidence in support of their survival claim to survive summary judgment—an argument previously considered and rejected by the magistrate judge. (ECF No. 80 at 18–23).

Plaintiffs rely on essentially the same evidence to support both their § 1983 claims and their state law claims. *Compare* (ECF No. 65 at 24–26), *with id*. at 7–16). However, because "deliberate indifference requires a much higher standard of fault than mere or even gross negligence," *A.P. ex. Rel. Bazerman v. Feaver*, No. 04-15645, 2008 WL 3870697, at *12 (11th

Cir. Aug. 21, 2008), the court's conclusion that Plaintiffs failed to offer sufficient evidence to support their deliberate indifference claim against Sergeant Leatherwood under § 1983 is not dispositive of Defendants' summary judgment motion as to Plaintiffs' claims against SCDC under the SCTCA. The court, in fact, agrees with the magistrate judge that Plaintiffs have created a genuine question of fact as to whether SCDC exercised even slight care in protecting Ray's health and safety. For example, as noted previously, Sergeant Leatherwood was the only correctional officer assigned to monitor both wings of Ray's housing unit on the day of Ray's assault and there is evidence that she did not perform walking security checks that day. Even if she had performed the once-per-hour security checks, at best the inmates in each wing would have been out of their cells and without the presence of a correctional officer for 30 minutes at a time. The evidence showed that the practice of having a single correctional officer handle two wings of a housing unit was a contributing factor to the long history of violence at LCI. The court, therefore, overrules Defendants' objections to this portion of the Report.

*Wrongful Death Claim*

As for Plaintiffs' wrongful death claim, the magistrate judge likewise recommended denying summary judgment. (ECF No. 80 at 23–25). The Report applied a negligence standard to this claim, noting that Plaintiffs' survival action imposes a higher gross negligence standard of fault. *Id*. at 24. The magistrate judge then concluded that because a genuine issue of fact existed as to whether Defendants acted with gross negligence, a genuine question of fact necessarily existed "as to whether Defendants acted with negligence." *Id*. at 25.

Defendants raised the same objections to the magistrate judge's recommended disposition of the wrongful death claim as to the survival claim, and the court overrules these objects for the reasons previously stated. Additionally, Defendants object to the Report's incorporation of a

negligence standard to Plaintiffs' wrongful death action under the SCTCA. (ECF No. 81 at 17). The SCTCA does require Plaintiffs to establish that Defendants acted in a "grossly negligent manner" for purposes of the wrongful death claim. S.C. Code Ann. § 15-78-60(25). However, as the magistrate judge recognized, there is a genuine issue of material fact as to gross negligence in this case. Therefore, SCDC is not entitled to summary judgment as to the wrongful death claim.

### IV. Conclusion

For the reasons set forth above, the court adopts in part and rejects in part the recommendations set forth in the Report. (ECF No. 80). The court **GRANTS** the motion for summary judgment (ECF No. 64) as to Plaintiffs' § 1983 claim against Sergeant Leatherwood in both her individual and official capacities.

With respect to Plaintiffs' state law claims, the court concludes it is appropriate to exercise supplemental jurisdiction over the claims arising under the SCTCA. The court **DENIES** the motion for summary judgment (ECF No. 64) as to Plaintiffs' state law claims.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
April 20, 2021